**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**MARY BARR,**

       **Plaintiff,**                    **CIVIL ACTION NO. 17-cv-12820**

    v.                              **DISTRICT JUDGE DAVID M. LAWSON**

**HSS, INC.,**                        **MAGISTRATE JUDGE MONA K. MAJZOUB**

       **Defendant.**

_____/

**REPORT AND RECOMMENDATION**

Plaintiff Mary Barr, proceeding *pro se*, initiated this employment discrimination action against Defendant HSS, Inc. on August 25, 2017, alleging violations of the Americans with Disabilities Act (ADA). (Docket no. 1.) Before the Court is Defendant's Motion to Dismiss Plaintiff's Complaint in Lieu of an Answer, Based on Her Arbitration Agreement. (Docket no. 13.) Plaintiff subsequently filed a "Request for case to stay in this Court and not enforce mediation/arbitration," which this Court construes as Plaintiff's Response to Defendant's Motion. (Docket no. 15) Defendant filed a Reply to Plaintiff's Response (docket no. 16), and Plaintiff filed a Sur-Reply (docket no. 17). This matter has been referred to the undersigned for all pretrial purposes. (Docket no. 4.) The undersigned has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2),[1] and issues this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

---

[1] Plaintiff filed a letter request on December 28, 2017 for a general hearing in this matter and for a jury trial (docket no. 21); however, upon review of the briefing, the undersigned concludes that oral argument is not necessary to resolve the pending Motion.

**I.     RECOMMENDATION**

For the reasons that follow, it is recommended that Defendant's Motion to Dismiss Plaintiff's Complaint in Lieu of an Answer, Based on Her Arbitration Agreement (docket no. 13) be converted into a motion for summary judgment and that the Motion for Summary Judgment be **GRANTED** insofar as Defendant seeks dismissal of Plaintiff's Complaint and a court order compelling Plaintiff to comply with the Arbitration Agreement. It is further recommended that Defendant's Motion be **DENIED** insofar as Defendant seeks a declaration that all of Plaintiff's claims exceeding the one-year contractual limitations period are time-barred and dismissal of those claims as a matter of law.

**II.     REPORT**

    **A.     Background**

Defendant HSS, Inc. is a company that provides security services to hospitals, airports, and other clients; it formerly provided security services at the Detroit Metropolitan Airport in Romulus, Michigan. (Docket no. 13 at 8.) Plaintiff Mary Barr was employed by Defendant as a security officer at the Detroit Metropolitan Airport from June 2014 to June 18, 2017, when Defendant's contract with the Airport ended. (Docket no. 1 ¶¶ 9, 13-14.) Upon hire, Plaintiff entered into an Arbitration Agreement with Defendant, which provides, in relevant part:

> [T]o provide for more expeditious resolution of certain employment-related disputes that may arise between HSS and its employees, HSS has instituted a mandatory mediation and arbitration procedure (the Responsive Resolution Program) for all employees. Under the Procedure, certain disputes that may arise from your employment with HSS or the termination of your employment must (after appropriate attempts to resolve your dispute internally through the Problem-Solving Procedure) be submitted for resolution by non-binding mediation and, if necessary, mandatory arbitration.
>
> In agreeing to submit certain employment disputes for resolution by private mediation and (if necessary) arbitration, you acknowledge that this Agreement is given in exchange for rights to which you are not otherwise

entitled—namely, your employment as an HSS employee and the more expeditious resolution of employment disputes. In exchange for your agreement to submit these disputes to mediation and (if necessary) binding arbitration, HSS likewise agrees to the use of mediation and arbitration as the exclusive forum for resolving employment disputes covered by this Agreement.

Hence, the parties shall be precluded from bringing or raising in court or another forum any dispute that was or could have been brought or raised under the procedures set forth in this Agreement.

In consideration for signing this Agreement, HSS agrees to: 1) utilize the RRP for any claims against Employee (e.g., theft, embezzlement, restitution, trade secrets/propriety information, other willful misconduct, etc.); and 2) pay $25.00 of employees [sic] capped arbitration filing fee imposed by the American Arbitration Association ("AAA") and all other filing fees as set forth by AAA.

This Agreement waives the parties rights to obtain any legal or equitable relief (e.g., monetary, injunctive or reinstatement) through any court, and they also waive their right to commence any court action to the extent that is permissible under law provided that either party may seek equitable relief to preserve the status quo pending final disposition under the RRP. The parties may seek and be awarded any remedy through the RRP that they could receive in a court of law. Nothing in this Agreement precludes either party from filing a charge or complaint with appropriate governmental administrative agencies . . . although the parties waive their right to any remedy or relief as a result of such charges or complaints brought by such governmental administrative agencies to the extent that is permissible under law. . . .

The parties agree to follow the multi-step process outlined in the RRP, which begins with the claims review, then mediation and, if necessary, culminates in the use of binding arbitration. In such an event, the claim shall be arbitrated by one arbitrator in accordance with the National Rules for the Resolution of Employment Disputes of the American Arbitration Association ("AAA") as amended by HSS's RRP. . . .

Unless prohibited by law, a demand to use RRP must be made in writing and must be postmarked or delivered to the RRP Program Administrator no later than one (1) year after the alleged unlawful conduct has occurred. Failure expressly to demand use of RRP, in writing, within that time limitation shall serve as a waiver and release with respect to all such claims. . . .

. . . .

A copy of the RRP Arbitration Rules is attached, and the AAA Employment Dispute Resolution Rules ("National Rules for the Resolution of

3

>Employment Disputes") are available for review on AAA's website at www.adr.org. . . .

(Docket no. 13-2.)

On October 13, 2016, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) and the Michigan Department of Civil Rights. (Docket no. 13-3.) In the Charge, Plaintiff explained that she filed a FOIA request on October 9, 2016, for work-related complaints filed on her behalf. According to Plaintiff, Defendant then relieved Plaintiff from duty and ordered her to submit to a Fitness for Duty Assessment on October 11, 2016. Plaintiff claims that Defendant discriminated against her, subjected her to an impermissible medical inquiry, and retaliated against her for filing the FOIA request, in violation of the ADA.

Plaintiff's instant Complaint, filed in this court on August 25, 2017, includes claims substantially similar to those she advanced in the EEOC Charge. (Docket no. 1.) It also includes allegations that Defendant discriminated against her with regard to its restroom policy and application thereof. As relief, Plaintiff seeks compensatory and punitive damages.

**B.      Governing Law**

Defendant moves to dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(3), and 12(b)(6), based on the contractual statute of limitations and the mandatory mediation/arbitration procedure set forth in the Arbitration Agreement. (Docket no. 13.) "A motion to dismiss based on an arbitration clause is more appropriately filed 'under Rule 12(b)(6), because the existence of a valid arbitration clause does not technically deprive the Court of subject matter jurisdiction.'" *Dental Assocs., P.C. v. Am. Dental Partners of Michigan, LLC*, No. 11-11624, 2011 WL 6122779, at *1 (E.D. Mich. Dec. 9, 2011), *aff'd*, 520 F. App'x 349 (6th Cir. 2013) (quoting *Moore v. Ferrellgas, Inc.,* 533 F. Supp. 2d 740, 744 (W.D. Mich.

4

2008)). "Instead, '[a]n arbitration agreement requires the Court to forego the exercise of jurisdiction in deference to the parties' contractual agreement to address in another forum those disputes which fall within the scope of the agreement to arbitrate.'" *Id.*

When deciding a motion under Rule 12(b)(6), the court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The plaintiff must provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)(2)). But this statement "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action;" instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This "facial plausibility" is required to "unlock the doors of discovery." *Id.* To make this determination, the *Iqbal* Court set out the following two-step analysis:

> [A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.* at 679.

"When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and

5

exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citation omitted).

The Arbitration Agreement at issue is not attached to Plaintiff's Complaint, nor is it central to Plaintiff's claims therein. Federal Rule of Civil Procedure 12(d) provides that if matters outside the pleadings are presented to and not excluded by the court on a Rule 12(b)(6) motion, the motion must be treated as one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). If this occurs, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id*. "Whether notice of conversion of a motion to dismiss to one for summary judgment by the court to the opposing party is necessary depends upon the facts and circumstances of each case." *Salehpour v. Univ. of Tennessee*, 159 F.3d 199, 204 (6th Cir. 1998). However, "[w]here one party is likely to be surprised by the proceedings, notice is required." *Id*. "The Sixth Circuit explained that there is no surprise to the parties when a district court sua sponte decides to convert a motion to dismiss to one for summary judgment if (a) both sides submit extrinsic material as exhibits to their pleadings, (b) the parties had the opportunity to respond to arguments and exhibits that were submitted by the other side, and (c) the parties had the opportunity to fully address all arguments for dismissal." *Wilkes v. Nat'l Credit Union Admin. Bd.*, No. 15-CV-11389, 2015 WL 7889049, at *1 n.1 (E.D. Mich. Dec. 4, 2015) (Steeh, J.) (citing *Shelby Cty. Health Care Corp. v. S. Council of Indus. Workers Health & Welfare Trust Fund*, 203 F.3d 926, 931-32 (6th Cir. 2000)).

Here, both parties rely on evidence extrinsic to the pleadings in support of their arguments for and against dismissal. Specifically, Defendant submitted and relies upon the Arbitration Agreement between the parties, which is attached as an exhibit to its Motion to

6

Dismiss. (Docket no. 13-2.) And Plaintiff submitted extrinsic evidence to the court as exhibits to her Response to Defendant's Motion. (Docket no. 15 at 4-23.) "Because the parties both submitted numerous exhibits fully addressing [Defendant's] argument for dismissal, they had sufficient notice that the district court could consider this outside material when ruling on the issues presented in [Defendant's] motion to dismiss and could convert it into a motion for summary judgment under Fed.R.Civ.P. 12(b)." *Shelby Cty. Health Care Corp.*, 203 F.3d at 932. Also, Plaintiff has taken the opportunity, albeit without leave of court, to respond to and address the arguments made by Defendant in its Reply brief by filing a Sur-Reply.[2] (Docket no. 17.) Furthermore, this Report and Recommendation serves as additional notice to the parties that the court may be converting Defendant's Motion into one for summary judgment, and the parties can submit any other supporting evidence that they have with any objections that they may have to this Report and Recommendation. Accordingly, Defendant's Motion to Dismiss should be converted into a motion for summary judgment.

Summary judgment is appropriate where the moving party shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Covington v. Knox Cnty. Sch. Sys.*, 205 F.3d 912, 915 (6th Cir. 2000). Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations,

---

[2] In light of the recommendation that Defendant's Motion to Dismiss be converted into one for summary judgment, the undersigned will consider Plaintiff's improperly-filed Sur-Reply brief (docket no. 17) and will therefore deny Defendant's Motion to Strike Plaintiff's Sur-Reply Brief (docket no. 18) in an order issued contemporaneously with this Report and Recommendation.

7

> stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

Once the moving party has met its burden of production, the non-moving party must come forward with significant probative evidence showing that a genuine issue exists for trial. *Covington*, 205 F.3d at 915. A mere scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment; rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Ultimately, a district court must determine whether the record as a whole presents a genuine issue of material fact, drawing "all justifiable inferences in the light most favorable to the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)*; Hager v. Pike County Bd. Of Educ.*, 286 F.3d 366, 370 (6th Cir. 2002).

### C. Analysis

The Federal Arbitration Act (FAA) governs the parties' Arbitration Agreement in this matter. Congress enacted the FAA, 9 U.S.C. § 1 *et seq.*, "to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." *EEOC v. Waffle House, Inc.,* 534 U.S. 279, 289 (2002) (quoting *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 24 (1991)). Under the FAA,

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or

> transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. "To enforce this dictate, the [FAA] provides for a stay of proceedings when an issue is referable to arbitration and for orders compelling arbitration when one party has failed or refused to comply with an arbitration agreement." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003) (citing 9 U.S.C. §§ 3, 4). "By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing §§ 3, 4) (emphasis in original). Thus, "absent a showing of fraud, duress, mistake, or some other ground upon which a contract may be voided, a court must enforce a contractual agreement to arbitrate." *Haskins v. Prudential Ins. Co. of Am.*, 230 F.3d 231, 239 (6th Cir. 2000).

When considering a motion to dismiss and compel arbitration, a court in the Sixth Circuit has four tasks:

> [F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) (citation omitted). "'[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.'" *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626 (1985) (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983)). "A party seeking invalidation of an arbitration agreement bears the burden of providing

9

that the arbitration provision is invalid or does not encompass the claim at issue." *Moore*, 533 F. Supp. 2d at 746 (citing *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 92 (2000)).

Here, the parties do not dispute that they agreed to arbitrate certain claims under the Arbitration Agreement or that the scope of the Arbitration Agreement extends to Plaintiff's federal statutory claims of employment discrimination under the ADA. Additionally, the ADA's plain language demonstrates that Congress intended claims arising under the statute to be arbitrable. *See* 42 U.S.C. § 12212 ("Where appropriate and to the extent authorized by law, the use of alternative means of dispute resolution, including settlement negotiations, conciliation, facilitation, mediation, factfinding, minitrials, and arbitration, is encouraged to resolve disputes arising under this chapter.") Indeed, "[t]he United States Supreme Court has endorsed arbitration and explained its benefits to employment disputes:

> We have been clear in rejecting the supposition that the advantages of the arbitration process somehow disappear when transferred to the employment context. Arbitration agreements allow parties to avoid the costs of litigation, a benefit that may be of particular importance in employment litigation, which often involves smaller sums of money than disputes concerning commercial contracts.... The Court has been quite specific in holding that arbitration agreements can be enforced under the FAA without contravening the policies of congressional enactments giving employees specific protection against discrimination prohibited by federal law; as we noted in *Gilmer,* "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.

*Moore,* 533 F. Supp. 2d at 747 (quoting *Circuit City Stores v. Adams,* 532 U.S. 105, 123 (2001) (citations omitted). Accordingly, the only issue remaining is whether the Arbitration Agreement may be invalidated by any of the "generally applicable state-law contract defenses like fraud, forgery, duress, mistake, lack of consideration or mutual obligation, or unconscionability." *See Cooper v. MRM Inv. Co.*, 367 F.3d 493, 498 (6th Cir. 2004) (citations omitted).

Plaintiff argues that the Arbitration Agreement is invalid because it is unconscionable, namely, because it is one-sided, harsh, and unclear. (Docket nos. 15, 17.) "[S]tate law governs 'generally applicable contract defenses [to an arbitration clause], such as fraud, duress, or unconscionability,'" "'*if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally[;]'. . . the FAA preempts 'state laws applicable *only* to arbitration provisions.'" *Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002) (quoting *Doctor's Assocs., Inc. v. Casarotto,* 517 U.S. 681, 686–87 (1996) (emphasis in original)). "The federal policy favoring arbitration, however, is taken into consideration even in applying ordinary state law." *Cooper*, 367 F.3d at 498 (citation omitted). The Arbitration Agreement in this matter indicates that it is to be governed by and interpreted in accordance with the laws of the State of Colorado. (Docket no. 13-2 at 4.) Thus, the Court must examine the elements of unconscionability under Colorado law.

> Colorado courts consider several factors in determining whether a contractual provision is unconscionable, including: (1) the use of a standardized agreement executed by parties of unequal bargaining power; (2) the lack of an opportunity for the customer to read or become familiar with the document before signing it; (3) the use of fine print in the portion of the contract containing the provision in question; (4) the absence of evidence that the provision was commercially reasonable or should reasonably have been anticipated; (5) the terms of the contract, including substantive fairness; (6) the relationship of the parties, including factors of assent, unfair surprise, and notice; and (7) the circumstances surrounding the formation of the contract, including setting, purpose, and effect.

*Bernal v. Burnett*, 793 F. Supp. 2d 1280, 1286 (D. Colo. 2011) (citing *Davis v. M.L.G. Corp.,* 712 P.2d 985, 991 (Colo. 1986)) [hereinafter "the *Davis* factors"]. "The *Davis* factors encompass both procedural and substantive unconscionability, both of which must be shown in Colorado." *Nesbitt v. FCNH, Inc.*, 74 F. Supp. 3d 1366, 1371 (D. Colo. 2014), *aff'd*, 811 F.3d

371 (10th Cir. 2016) (citing *Vernon v. Qwest Commc'ns Intern., Inc.,* 925 F. Supp. 2d 1185, 1194–95 (D. Colo. 2013); *Davis,* 712 P.2d at 991).

The Court begins with an analysis of the *Davis* factors related to procedural unconscionability – the first, second, third, sixth, and seventh factors. *See Nesbitt*, 74 F. Supp. 3d at 1371. With regard to the first factor, the Arbitration Agreement in this matter is indeed a standardized agreement executed by parties of unequal bargaining power. But this factor, standing alone, is not enough for a finding of unconscionability. *Id.* (citing *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346–47 (2011) ("[T]he times in which consumer contracts were anything other than adhesive are long past.")). Moving on to the second factor, Plaintiff does not assert a lack of opportunity to read or familiarize herself with the Arbitration Agreement before signing it. She does, however, contend that she did not receive a copy of the RRP Arbitration Rules when she signed the Agreement, despite the Agreement's indication otherwise. (Docket no. 15 at 3; docket no. 17 at 3, 4; *see* docket no. 13-2 at 3.) Nevertheless, Plaintiff does not claim that she requested and was denied a copy of the RRP Arbitration Rules at the time she signed the Arbitration Agreement; nor does she claim that she would not have signed the Agreement had she been given the opportunity to review the Rules at that time. Also relevant to the second factor is the fact that the Arbitration Agreement advised Plaintiff of her right to consult with an attorney of her choice regarding the Agreement. (*Id.* at 4.) With regard to the third factor, the Arbitration Agreement appears to be written in 12-point font, and does not contain any fine print.

The sixth factor requires consideration of the parties' relationship, including issues of assent, unfair surprise, and notice. It is notable here that the Arbitration Agreement provided Plaintiff with the right to opt out of the Agreement within 30 days, charged Plaintiff with an

affirmative duty to report to the RRP Administrator in writing if she had been threatened or coerced to enter into the Agreement, and advised her of the procedures for opting out and reporting coercion. (Docket no. 13-2 at 4.) There is no evidence that Plaintiff demanded to opt out of the Agreement reported coercion to the Administrator. Lastly, the seventh *Davis* factor has been characterized as a "catchall that allows for consideration of all of the factors surrounding formation of the contract." *Nesbitt*, F. Supp. 3d at 1372. Plaintiff does not allege any additional aspects of unconscionability surrounding the formation of the contract, and the Court finds none.

Thus, with the exception of the first factor, the *Davis* factors related to procedural unconscionability do not weigh in Plaintiff's favor. While the Arbitration Agreement is one of adhesion, Plaintiff was provided ample opportunity to familiarize herself with the Agreement, advised of her right to consult with an attorney regarding its terms, and advised of her right to opt out of the Agreement. And there is no evidence that Plaintiff requested and was denied an opportunity to review the RRP Arbitration Rules before signing the Agreement. Accordingly, the Arbitration Agreement is procedurally conscionable.

In light of the above determination and the fact that both procedural and substantive unconscionability are required to invalidate an arbitration agreement under Colorado law, the Court need not address the fourth and fifth *Davis* factors relating to substantive unconscionability. Nevertheless, considering Plaintiff's *pro se* status and the fact that the majority of her arguments against dismissal and compelled arbitration fall under the prong of substantive unconscionability, the Court will proceed to address Plaintiff's arguments in this regard.

13

Plaintiff argues that the Arbitration Agreement is one-sided because it requires the parties to follow a multi-step dispute resolution process in which Defendant is the investigator and decision maker at the first two steps. (Docket no. 15 at 2.) Indeed, the first two steps of the Responsive Resolution Program (RRP) require the parties to engage in a claims review and mediation through Defendant's RRP Program Administrator. (Docket no. 13-2 at 3.) If the dispute is not resolved at the first two steps, the employee may send the RRP Program Administrator a Step 3 Appeal Claim Form, and the process then culminates in the use of binding arbitration before a neutral arbitrator. (*Id.*) Plaintiff provides no legal authority for finding this process to be substantively unconscionable under Colorado law, and the Court finds none. Notably, as Defendant points out, a court in this District enforced an arbitration agreement similar to the one in this matter, where the process included interactive steps between the employee and employer before proceeding to arbitration. (Docket no. 16 at 6 (citing *Pellow v. Daimler Chrysler Servs. N. Am., LLC*, No. 05-73815, 2006 WL 2540947 (E.D. Mich. Aug. 31, 2006).

Plaintiff also argues that the multi-step process is a "bullying/intimidating tactic" because the only issues that Defendant listed that it investigates are criminal issues. (Docket no. 17 at 3.) Plaintiff presumably is referring to the portion of the Arbitration Agreement in which Defendant agrees to "utilize the RRP for any claims against Employee (e.g., theft, embezzlement, restitution, trade secrets/propriety information, other willful misconduct, etc.)." (Docket no. 13-2 at 2.) This portion of the Agreement indicates Defendant's mutual assent to use the RRP process in the Arbitration Agreement should any claims against Plaintiff arise; the criminal claims of theft and embezzlement in this sentence are only listed as examples of claims that may

14

arise against an employee in an employment relationship. Moreover, there is no indication that Defendant intends to pursue any criminal claims against Plaintiff.

Plaintiff further argues that the multi-step process is one-sided because it requires Plaintiff to provide discovery at the initial steps of the process, but Defendant is only required to share information at the arbitration level. (Docket no. 17 at 4.) She also claims that "there is no true discovery at the arbitration level." (*Id*. at 5.) The Step 1 Claim Form and the Step 2 Appeal Claim Form that Plaintiff attached to her Response to Defendant's Motion do indeed indicate that Plaintiff is required to provide information and evidence to Defendant to support her claims (*see* docket no. 15 at 7-16); however, there is no indication that Defendant would not provide or is exempted from providing information to Plaintiff upon request at Steps 1 and 2 of the process. Additionally, when and if the claim reaches the arbitration level, the discovery process is governed by the Federal Rules of Civil Procedure, which apply equally to both parties. (Docket no. 13-2 at 5.) Plaintiff's arguments concerning the multi-step process are therefore unavailing.

Plaintiff also believes that the Arbitration Agreement is unconscionable and one-sided because the employee is the only party subjected to the time limitation for filing claims. (Docket no. 15 at 2.) But Plaintiff misinterprets the Agreement in this regard. As the Agreement indicates, Defendant has agreed to utilize the RRP for any claims it has against Plaintiff, and the Agreement provides that a demand to use the RRP must be made in writing within one year of the alleged unlawful conduct. (Docket no. 13-2 at 2, 3.) Accordingly, the terms of the Agreement subject both parties to the one-year limitations period. For the reasons discussed above, Plaintiff's arguments regarding the substantive unconscionability of the Arbitration Agreement lack merit. Moreover, a comprehensive review of the Agreement does not reveal

anything substantively unfair regarding its terms. *See* the *Davis* factors, *supra*. Accordingly, the Arbitration Agreement is substantively conscionable.

The Arbitration Agreement is procedurally and substantively conscionable, and it is therefore valid and enforceable. Upon finding an arbitration agreement to be valid and enforceable, the court must order the parties to proceed to arbitration in accordance with the terms of the agreement. 9 U.S.C. § 4. The court must also determine whether the case should be stayed pending arbitration or whether the Complaint should be dismissed. Section 3 of the FAA directs the court to stay the action until arbitration is complete, 9 U.S.C. § 3; however, applicable case law provides that a court is not so limited when all of the issues raised in the complaint are arbitrable. *Moore*, 533 F. Supp. 2d at 751-52 (citing *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.,* 252 F.3d 707, 709–10 (4th Cir. 2001) (concluding "dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable") (citation omitted); *Green v. Ameritech Corp.,* 200 F.3d 967, 973 (6th Cir. 2000); *Bercovitch v. Baldwin Sch., Inc.,* 133 F.3d 141, 156 & n. 21 (1st Cir. 1998); *Alford v. Dean Witter Reynolds, Inc.,* 975 F.2d 1161, 1164 (5th Cir. 1992) ("The weight of authority clearly supports dismissal of the case when *all* of the issues raised in the district court must be submitted to arbitration."); *Sparling v. Hoffman Constr. Co.,* 864 F.2d 635, 638 (9th Cir. 1988); *Gassner v. Jay Wolfe Toyota,* No. 4:06–CV–1335 CAS, 2007 WL 1452240, at *3 (E.D. Mo. May 15, 2007) ("Where all issues in a case must be submitted to arbitration, it serves no purpose to retain jurisdiction and stay an action."); *see also Nexteer Auto. Corp. v. Korea Delphi Auto. Sys. Corp.*, No. 13-CV-15189, 2014 WL 562264, at *4 (E.D. Mich. Feb. 13, 2014) (citing *Arnold v. Arnold Corp.-Printed Comm. for Business,* 920 F.2d 1269, 1275 (6th Cir. 1990) ("The Sixth Circuit has condoned dismissal, rather than merely a stay, under § 3 where the only thing left for the district court to do is to execute a judgment.");

*Vosburgh v. BFS Retail & Commercial Operations, LLC,* No. 06-15073, 2007 WL 1084339, at *4 (E.D. Mich. Apr. 11, 2007) ("When claims in a case are subject to final and binding arbitration, the Court may dismiss the case.") Because all of Plaintiff's claims fall within the scope of the Arbitration Agreement, they are all subject to final and binding arbitration, and the court should therefore dismiss Plaintiff's Complaint and compel Plaintiff to comply with the Arbitration Agreement.

In addition to the above relief, Defendant asks the court to declare that all of Plaintiff's claims that exceed the one-year contractual limitations period are time-barred and dismiss those claims as a matter of law. (Docket no. 13 at 2, 8, 12-14, 17.) The Arbitration Agreement provides that procedural questions that grow out of the dispute and bear on the final disposition of the matter, such as whether claims are barred by the one-year limitations period, are matters for the arbitrator, but they may be decided by a court where a party has already initiated a judicial proceeding. (Docket no. 13-2 at 3.) Plaintiff's Complaint, however, is not a model of clarity regarding the precise dates of when her claims arose, and Defendant does not identify with any specificity the claims for which it seeks dismissal on this basis. The details of Plaintiff's claims will likely emerge during the arbitration process and can be appropriately addressed by the arbitrator at that time. The court should therefore decline to address this procedural matter.

### D. Conclusion

For the above-stated reasons, the court should convert Defendant's Motion to Dismiss Plaintiff's Complaint in Lieu of an Answer, Based on Her Arbitration Agreement (docket no. 13) into a motion for summary judgment and **GRANT IN PART** and **DENY IN PART** the Motion for Summary Judgment. Specifically, the court should dismiss Plaintiff's Complaint and compel

the parties to proceed to arbitration in accordance with the Arbitration Agreement but deny Defendant's request regarding the Agreement's one-year contractual limitations period.

### III. NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Eastern District of Michigan Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *U.S. v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: May 10, 2018         s/ Mona K. Majzoub
                            MONA K. MAJZOUB
                            UNITED STATES MAGISTRATE JUDGE

## **PROOF OF SERVICE**

      I hereby certify that a copy of this Report and Recommendation was served upon Plaintiff Mary Barr and counsel of record on this date.

Dated: May 10, 2018         <u>s/ Leanne Hosking</u>
                                        Case Manager